1  E. MARTIN ESTRADA
   United States Attorney
2  CHRISTOPHER D. GRIGG
   Assistant United States Attorney
3  Chief, National Security Division
   ANNAMARTINE SALICK (Cal. Bar No. 309254)
4  Assistant United States Attorney
   Chief, Terrorism and Export Crimes Section
5  SOLOMON KIM (Cal. Bar No. 295785)
   MARIA JHAI (Cal. Bar No. 257595)
6  Assistant United States Attorneys
   Terrorism and Export Crimes Section
7       1500 United States Courthouse
        312 North Spring Street
8       Los Angeles, California 90012
        Telephone: (213) 894-3424/2450/4138
9       Facsimile: (213) 894-0140
        E-mail:    annamartine.salick2@usdoj.gov
10                 solomon.kim@usdoj.gov
                   maria.jhai@usdoj.gov
11
   Attorneys for Plaintiff
12 UNITED STATES OF AMERICA

13              UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,          No. CR 18-00759(A)-CJC-2

16          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      ROBERT BOMAN
17          v.

18 ROBERT BOMAN,

19          Defendant.

20

21      1.   This constitutes the plea agreement between ROBERT BOMAN

22 ("defendant") and the United States Attorney's Office for the Central

23 District of California (the "USAO") in the above-captioned case.

24 This agreement is limited to the USAO and cannot bind any other

25 federal, state, local, or foreign prosecuting, enforcement,

26 administrative, or regulatory authorities.

27                      DEFENDANT'S OBLIGATIONS

28      2.   Defendant agrees to:

1          a.    Give up the right to indictment by a grand jury and,

2     at the earliest opportunity requested by the USAO and provided by the

3     Court, appear and plead guilty to a single-count information in the

4     form attached to this agreement as Exhibit A or a substantially

5     similar form, which charges defendant with Conspiracy, in violation

6     of 18 U.S.C. § 371.

7          b.    Not contest facts agreed to in this agreement.

8          c.    Abide by all agreements regarding sentencing contained

9     in this agreement.

10         d.    Appear for all court appearances, surrender as ordered

11    for service of sentence, obey all conditions of any bond, and obey

12    any other ongoing court order in this matter.

13         e.    Not commit any crime; however, offenses that would be

14    excluded for sentencing purposes under United States Sentencing

15    Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16    within the scope of this agreement.

17         f.    Be truthful at all times with the United States

18    Probation and Pretrial Services Office and the Court.

19         g.    Pay the applicable special assessment at or before the

20    time of sentencing unless defendant has demonstrated a lack of

21    ability to pay such assessments.

22                        THE USAO'S OBLIGATIONS

23    3.    The USAO agrees to:

24         a.    Not contest facts agreed to in this agreement.

25         b.    Abide by all agreements regarding sentencing contained

26    in this agreement.

27         c.    At the time of sentencing, move to dismiss the

28    underlying indictment as against defendant.  Defendant agrees,

1  however, that at the time of sentencing the Court may consider any
2  dismissed charges in determining the applicable Sentencing Guidelines
3  range, the propriety and extent of any departure from that range, and
4  the sentence to be imposed.

5          d.   At the time of sentencing, provided that defendant
6  demonstrates an acceptance of responsibility for the offense up to
7  and including the time of sentencing, recommend a two-level reduction
8  in the applicable Sentencing Guidelines offense level, pursuant to
9  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
10  additional one-level reduction if available under that section.

11          e.   Recommend that defendant be sentenced to a term of
12  imprisonment no higher than the low end of the applicable Sentencing
13  Guidelines range, provided that the offense level used by the Court
14  to determine that range is 12 or higher and provided that the Court
15  does not depart downward in offense level or criminal history
16  category.   For purposes of this agreement, the low end of the
17  Sentencing Guidelines range is that defined by the Sentencing Table
18  in U.S.S.G. Chapter 5, Part A.

19                          NATURE OF THE OFFENSE

20      4.   Defendant understands that for defendant to be guilty of
21  the crime charged in the First Superseding Information, that is,
22  conspiracy to commit the crime of rioting in violation of Title 18,
23  United States Code, Section 371, the following must be true:   (1)
24  between on or about March 2017 and October 2, 2018, there was an
25  agreement between two or more persons to commit at least one crime as
26  charged in the indictment; (2) defendant became a member of the
27  conspiracy knowing of at least one of its objects and intending to
28  help accomplish it; and (3) one of the members of the conspiracy

1  performed at least one overt act for the purpose of carrying out the
2  conspiracy.

3      5.     Defendant understands that the elements of the crime of
4  rioting in violation of 18 U.S.C. § 2101, which is the object of the
5  conspiracy charged in the single-count indictment, the following must
6  be true: (1) defendant traveled in interstate or foreign commerce or
7  used any facility of interstate or foreign commerce, including, but
8  not limited to, the mail, telegraph, telephone, radio, or television;
9  (2) defendant did so with intent to incite a riot, to participate in,
10 or carry on a riot, or to commit an act of violence in furtherance of
11 a riot, or to aid or abet any person in inciting or participating in
12 or carrying on a riot or committing any act of violence in
13 furtherance of a riot; and (3) during the course of such travel or
14 use or thereafter, defendant performed or attempted to perform an
15 overt act for any purpose specified above.

16                              PENALTIES

17     6.     Defendant understands that the statutory maximum sentence
18 that the Court can impose for a violation of Title 18, United States
19 Code, Section 371, is 5 years' imprisonment; a 3-year period of
20 supervised release; a fine of $250,000 or twice the gross gain or
21 gross loss resulting from the offense, whichever is greatest; and a
22 mandatory special assessment of $100.

23     7.     Defendant understands that supervised release is a period
24 of time following imprisonment during which defendant will be subject
25 to various restrictions and requirements.  Defendant understands that
26 if defendant violates one or more of the conditions of any supervised
27 release imposed, defendant may be returned to prison for all or part
28 of the term of supervised release authorized by statute for the

                                4

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.     Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.     Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.   The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.   Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

1 | FACTUAL BASIS

2   10.   Defendant admits that defendant is, in fact, guilty of the

3 offense to which defendant is agreeing to plead guilty.  Defendant

4 and the USAO agree to the statement of facts provided below and agree

5 that this statement of facts is sufficient to support a plea of

6 guilty to the charge described in this agreement and to establish the

7 Sentencing Guidelines factors set forth in paragraph 12 below but is

8 not meant to be a complete recitation of all facts relevant to the

9 underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11   Between March 2017 and October 2, 2018, defendant, his co-

12 conspirators, and others participated in an organization originally

13 known as the "DIY Division" that was later re-branded as the "Rise

14 Above Movement" or "RAM."   RAM was located in the greater Los

15 Angeles, California area, in the Central District of California, and

16 represented itself as a combat-ready, militant group of a new

17 nationalist white supremacy and identity movement.   Under the aegis

18 of RAM, at all relevant times, defendant and his co-conspirators

19 agreed to attend, and did attend, rallies with the intent to

20 participate in, carry on, and commit acts of violence of further of a

21 riot, with each conspirator aiding and abetting one another in those

22 objectives.

23   Defendant and his co-conspirators performed numerous overt acts

24 in furtherance of their agreement, including the following (as

25 described more fully below):

26   •   To prepare for violent physical conflict, defendant, his

27 co-conspirators, and other RAM members and associates regularly held

28

1  hand-to-hand and other combat training sessions.   Defendant attended
2  several such training sessions in 2017.

3       •     On various social media platforms – including Twitter,
4  Facebook, Instagram, GAB, and Discord – defendant and his co-
5  conspirators posted messages and photographs of themselves preparing
6  for or engaging in violence, accompanied by statements such as "When
7  the squad[']s not out smashing commies," "#rightwingdeathsquad," and
8  "#goodnightleftside."

9       **March 25, 2017: Huntington Beach, California**

10      On March 15, 2017, defendant, co-conspirators Robert Rundo and
11  Tyler Laube, and other RAM members engaged in combat training in San
12  Clemente, California, to prepare to engage in violence at political
13  events, including an upcoming political rally on March 25, 2017 in
14  Huntington Beach, California (the "Huntington Beach Rally").
15  Defendant and his co-conspirators took the following actions with the
16  intent to incite, participate in, and carry on a riot, and to commit
17  acts of violence in furtherance of a riot at the Huntington Beach
18  Rally:

19      On March 25, 2017, defendant attended the Huntington Beach Rally
20  along with co-conspirators Boman and Laube, and other RAM members.

21      At that event, defendant and his co-conspirators pursued
22  protestors and engaged in acts of violence, including assaulting
23  groups of protestors and other persons.   Defendant personally
24  punched, shoved, and kicked one protestor in the back, while other
25  RAM members and co-conspirators pursued, tackled, and punched
26  protestors.   Following that event, news outlets, including various
27  Neo-Nazi and white supremacist websites, published photographs

28

1  depicting defendant and his co-conspirators engaged in those
2  assaults.

3      Defendant and his co-conspirators celebrated this news coverage
4  both in-person and through text and social media messages, and used
5  the Internet to post statements, photographs, and videos of the
6  assaults in order to recruit members to engage in violent
7  confrontations at future events.  For example, on March 26, 2017,
8  defendant posted on his Facebook account a link to an article on The
9  Daily Stormer titled "Trumpenkriegers Physically Remove Antifa Homos
10  in Huntington Beach," along with the comment "We did it fam."
11  Similarly, on that same date, defendant posted a photograph on his
12  Facebook account showing himself, other co-conspirators, and other
13  RAM members at the Huntington Beach Rally, along with the comment
14  "Hail victory and the alt-reich."  On February 15, 2018, the RAM
15  Twitter account posted a message showing defendant and several other
16  RAM members at the Huntington Beach Rally, with the message "Shortly
17  after this pic antifa was btfo [blown the f*ck out] in Huntington
18  Beach."

19      **April 15, 2017: Berkeley, California**

20      On April 15, 2017, a political rally was scheduled to occur in
21  Martin Luther King Jr. Civic Center Park in Berkeley, California (the
22  "Berkeley Rally").  Defendant and co-conspirators Rundo and Aaron
23  Eason took the following actions with the intent to incite,
24  participate in, and carry on a riot, and to commit acts of violence
25  in furtherance of a riot at the Berkeley Rally:

26      In anticipation of this rally, defendant attended a RAM training
27  on Sunday, April 9, 2017, in San Clemente, California, where
28

8

1   participants engaged in hand-to-hand fighting and formation fighting
2   training.

3        On the evening of April 14, 2017, defendant, co-conspirators
4   Rundo and Eason, and other RAM members reserved and rented a van from
5   Airport Van Rentals located at the Los Angeles International Airport
6   to drive together to Richmond, California, where they checked into an
7   international chain hotel.

8        On April 15, 2017, defendant and his co-conspirators prepared to
9   commit acts of violence at the Berkeley Rally by wrapping their hands
10  with athletic tape and wearing coordinating grey shirts, goggles, and
11  black scarfs and masks to cover the lower half of their faces.

12       Throughout the day, there were several violent clashes between
13  opposing groups at the rally.  In one of the first such instances,
14  defendant, co-conspirators Rundo and Eason, and other RAM members
15  crossed the barrier that police had erected to separate the opposing
16  groups and punched and kicked several people.  Several minutes later,
17  defendant and his co-conspirators again crossed the barrier and
18  engaged in fights with protestors.

19       Later in the day, defendant, co-conspirator Eason, and other RAM
20  members pursued fleeing protestors away from the park through the
21  streets of downtown Berkeley.  Defendant punched at least one fleeing
22  protestor, while another RAM member attacked another protestor,
23  punching him several times and stomping on him once.  Another RAM
24  member hurled ladles of hot beans at the fleeing protestors, before
25  throwing the pot itself into the crowd, kicking down a fence that was
26  blocking the street, and kicking a fleeing protestor from behind.

27       Thereafter, various Neo-Nazi and white supremacist websites
28  published photographs depicting defendant and his co-conspirators

9

1   assaulting protestors and other persons at the Berkeley Rally.
2   Defendant and his co-conspirators celebrated this news coverage, and
3   used the Internet to post photographs and videos of assaults one or
4   more of them had committed in order to recruit others to engage in
5   violence in furtherance of a riot at future events.

6       For example, on April 16, 2017, defendant posted a photograph on
7   his Facebook page showing him punching persons at the Berkeley Rally
8   along with the caption "Oooooi vey!!!  Dagoyiiiim knooooow."
9   Similarly, on that same date, defendant posted a photograph on his
10  Facebook account containing a Twitter post in which a journalist
11  identified defendant and one of his co-conspirators at the Berkeley
12  Rally and accused them of shoving him.  Defendant wrote "You come
13  face to face with the enemy, what do you expect . . . [.]"  On April
14  18, 2017, defendant shared on Facebook a video depicting RAM's co-
15  founder and other RAM members assaulting protestors at the Berkeley
16  Rally, titled, "Based Elbow Man & Crew Stomp ANTIFA."  On August 10,
17  2017, defendant posted a photograph on his Facebook page showing
18  himself punching a person at the Berkeley Rally.

19      In committing the foregoing actions with the intent to incite,
20  participate in, and carry on riots, and to commit violence in
21  furtherance of a riot, defendant and his co-conspirators traveled in,
22  and used facilities of, interstate and foreign commerce.

23                          SENTENCING FACTORS

24      11.  Defendant understands that in determining defendant's
25  sentence the Court is required to calculate the applicable Sentencing
26  Guidelines range and to consider that range, possible departures
27  under the Sentencing Guidelines, and the other sentencing factors set
28  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

                                10

1  Sentencing Guidelines are advisory only, that defendant cannot have
2  any expectation of receiving a sentence within the calculated
3  Sentencing Guidelines range, and that after considering the
4  Sentencing Guidelines and the other § 3553(a) factors, the Court will
5  be free to exercise its discretion to impose any sentence it finds
6  appropriate up to the maximum set by statute for the crime of
7  conviction.

8      12.  Defendant and the USAO agree to the following applicable
9  Sentencing Guidelines factors:

10     Base Offense Level:              14          U.S.S.G. § 2A2.2(a)
11 Defendant and the USAO reserve the right to argue that additional
12 specific offense characteristics, adjustments, and departures under
13 the Sentencing Guidelines are appropriate.  Defendant understands
14 that defendant's offense level could be increased if defendant is a
15 career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's
16 offense level is so altered, defendant and the USAO will not be bound
17 by the agreement to Sentencing Guideline factors set forth above.

18     13.  Defendant understands that there is no agreement as to
19 defendant's criminal history or criminal history category.

20     14.  Defendant and the USAO reserve the right to argue for a
21 sentence outside the sentencing range established by the Sentencing
22 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
23 (a)(2), (a)(3), (a)(6), and (a)(7).

24                    WAIVER OF CONSTITUTIONAL RIGHTS

25     15.  Defendant understands that by pleading guilty, defendant
26 gives up the following rights:

27          a.   The right to persist in a plea of not guilty.

28          b.   The right to a speedy and public trial by jury.

11

1                c.    The right to be represented by counsel -- and if
2 necessary have the Court appoint counsel -- at trial. Defendant
3 understands, however, that, defendant retains the right to be
4 represented by counsel -- and if necessary have the Court appoint
5 counsel -- at every other stage of the proceeding.

6                d.    The right to be presumed innocent and to have the
7 burden of proof placed on the government to prove defendant guilty
8 beyond a reasonable doubt.

9                e.    The right to confront and cross-examine witnesses
10 against defendant.

11                f.    The right to testify and to present evidence in
12 opposition to the charges, including the right to compel the
13 attendance of witnesses to testify.

14                g.    The right not to be compelled to testify, and, if
15 defendant chose not to testify or present evidence, to have that
16 choice not be used against defendant.

17                h.    Any and all rights to pursue any affirmative defenses,
18 Fourth Amendment or Fifth Amendment claims, and other pretrial
19 motions that have been filed or could be filed.

20                     WAIVER OF APPEAL OF CONVICTION

21    16.   Defendant understands that, with the exception of an appeal
22 based on a claim that defendant's guilty plea was involuntary, or an
23 appeal on the grounds specifically reserved in paragraph 3 above, by
24 pleading guilty defendant is waiving and giving up any right to
25 appeal defendant's conviction on the offense to which defendant is
26 pleading guilty. Defendant understands that this waiver includes,
27 but is not limited to, arguments that the statute to which defendant
28 is pleading guilty is unconstitutional, and any and all claims that

1  the statement of facts provided herein is insufficient to support
2  defendant's plea of guilty.

3  ## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4      17.    Defendant agrees that, provided the Court imposes a term of
5  imprisonment within or below the range corresponding to an offense
6  level of 12 and the criminal history category calculated by the
7  Court, defendant gives up the right to appeal all of the following:
8  (a) the procedures and calculations used to determine and impose any
9  portion of the sentence; (b) the term of imprisonment imposed by the
10 Court; (c) the fine imposed by the Court, provided it is within the
11 statutory maximum; (d) to the extent permitted by law, the
12 constitutionality or legality of defendant's sentence, provided it is
13 within the statutory maximum; (e) the term of probation or supervised
14 release imposed by the Court, provided it is within the statutory
15 maximum; and (f) any of the following conditions of probation or
16 supervised release imposed by the Court: the conditions set forth in
17 Second Amended General Order 20-04 of this Court; the drug testing
18 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
19 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20     18.    The USAO agrees that, provided (a) all portions of the
21 sentence are at or below the statutory maximum specified above and
22 (b) the Court imposes a term of imprisonment within or above the
23 range corresponding to an offense level of 12 and the criminal
24 history category calculated by the Court, the USAO gives up its right
25 to appeal any portion of the sentence.

26     19.    Defendant also gives up any right to bring a post-
27 conviction collateral attack on the conviction or sentence, except a
28 post-conviction collateral attack based on a claim of ineffective

13

1   assistance of counsel.  Defendant understands that this waiver
2   includes, but is not limited to, arguments that the statute to which
3   defendant is pleading guilty is unconstitutional, and any and all
4   claims that the statement of facts provided herein is insufficient to
5   support defendant's plea of guilty.

6                  RESULT OF WITHDRAWAL OF GUILTY PLEA

7        20.  Defendant agrees that if, after entering a guilty plea
8   pursuant to this agreement, defendant seeks to withdraw and succeeds
9   in withdrawing defendant's guilty plea on any basis other than a
10  claim and finding that entry into this plea agreement was
11  involuntary, then (a) the USAO will be relieved of all of its
12  obligations under this agreement; and (b) should the USAO choose to
13  pursue any charge that was either dismissed or not filed as a result
14  of this agreement, then (i) any applicable statute of limitations
15  will be tolled between the date of defendant's signing of this
16  agreement and the filing commencing any such action; and
17  (ii) defendant waives and gives up all defenses based on the statute
18  of limitations, any claim of pre-indictment delay, or any speedy
19  trial claim with respect to any such action, except to the extent
20  that such defenses existed as of the date of defendant's signing this
21  agreement.

22                   EFFECTIVE DATE OF AGREEMENT

23       21.  This agreement is effective upon signature and execution of
24  all required certifications by defendant, defendant's counsel, and an
25  Assistant United States Attorney.

26                      BREACH OF AGREEMENT

27       22.  Defendant agrees that if defendant, at any time after the
28  signature of this agreement and execution of all required

                              14

1  certifications by defendant, defendant's counsel, and an Assistant
2  United States Attorney, knowingly violates or fails to perform any of
3  defendant's obligations under this agreement ("a breach"), the USAO
4  may declare this agreement breached.  All of defendant's obligations
5  are material, a single breach of this agreement is sufficient for the
6  USAO to declare a breach, and defendant shall not be deemed to have
7  cured a breach without the express agreement of the USAO in writing.
8  If the USAO declares this agreement breached, and the Court finds
9  such a breach to have occurred, then: (a) if defendant has previously
10 entered a guilty plea pursuant to this agreement, defendant will not
11 be able to withdraw the guilty plea, and (b) the USAO will be
12 relieved of all its obligations under this agreement.

13      23.  Following the Court's finding of a knowing breach of this
14 agreement by defendant, should the USAO choose to pursue any charge
15 that was either dismissed or not filed as a result of this agreement,
16 then:

17           a.   Defendant agrees that any applicable statute of
18 limitations is tolled between the date of defendant's signing of this
19 agreement and the filing commencing any such action.

20           b.   Defendant waives and gives up all defenses based on
21 the statute of limitations, any claim of pre-indictment delay, or any
22 speedy trial claim with respect to any such action, except to the
23 extent that such defenses existed as of the date of defendant's
24 signing this agreement.

25           c.   Defendant agrees that: (i) any statements made by
26 defendant, under oath, at the guilty plea hearing (if such a hearing
27 occurred prior to the breach); (ii) the agreed to factual basis
28 statement in this agreement; and (iii) any evidence derived from such

15

1   statements, shall be admissible against defendant in any such action
2   against defendant, and defendant waives and gives up any claim under
3   the United States Constitution, any statute, Rule 410 of the Federal
4   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
5   Procedure, or any other federal rule, that the statements or any
6   evidence derived from the statements should be suppressed or are
7   inadmissible.

8              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
9                              OFFICE NOT PARTIES

10      24.   Defendant understands that the Court and the United States
11  Probation and Pretrial Services Office are not parties to this
12  agreement and need not accept any of the USAO's sentencing
13  recommendations or the parties' agreements to facts or sentencing
14  factors.

15      25.   Defendant understands that both defendant and the USAO are
16  free to: (a) supplement the facts by supplying relevant information
17  to the United States Probation and Pretrial Services Office and the
18  Court, (b) correct any and all factual misstatements relating to the
19  Court's Sentencing Guidelines calculations and determination of
20  sentence, and (c) argue on appeal and collateral review that the
21  Court's Sentencing Guidelines calculations and the sentence it
22  chooses to impose are not error, although each party agrees to
23  maintain its view that the calculations in paragraph 12 are
24  consistent with the facts of this case.  While this paragraph permits
25  both the USAO and defendant to submit full and complete factual
26  information to the United States Probation and Pretrial Services
27  Office and the Court, even if that factual information may be viewed
28  as inconsistent with the facts agreed to in this agreement, this

 1 | paragraph does not affect defendant's and the USAO's obligations not
 2 | to contest the facts agreed to in this agreement.

 3 |     26.  Defendant understands that even if the Court ignores any
 4 | sentencing recommendation, finds facts or reaches conclusions
 5 | different from those agreed to, and/or imposes any sentence up to the
 6 | maximum established by statute, defendant cannot, for that reason,
 7 | withdraw defendant's guilty plea, and defendant will remain bound to
 8 | fulfill all defendant's obligations under this agreement.  Defendant
 9 | understands that no one -- not the prosecutor, defendant's attorney,
10 | or the Court -- can make a binding prediction or promise regarding
11 | the sentence defendant will receive, except that it will be within
12 | the statutory maximum.

13 | NO ADDITIONAL AGREEMENTS

14 |     27.  Defendant understands that, except as set forth herein,
15 | there are no promises, understandings, or agreements between the USAO
16 | and defendant or defendant's attorney, and that no additional
17 | promise, understanding, or agreement may be entered into unless in a
18 | writing signed by all parties or on the record in court.

19 | PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

20 |     28.  The parties agree that this agreement will be considered
21 | part of the record of defendant's guilty plea hearing as if the
22 | //
23 | //

17

1 | entire agreement had been read into the record of the proceeding.

2 | AGREED AND ACCEPTED

3 | UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
4 | CALIFORNIA

5 | E. MARTIN ESTRADA
United States Attorney

6 |        *(signature)*                                  2/6/23

7 | _____        _____
ANNAMARTINE SALICK                     Date
8 | SOLOMON KIM
MARIA JHAI
9 | Assistant United States Attorneys

10 |       *(signature)*                            **2/4/23**
                                        Date
ROBERT BOMAN
11 | Defendant

12 |       *(signature)*                            **2-4-2023**
                                        Date
PETER SWARTH
13 | Attorney for Defendant ROBERT BOMAN

14 |

15 |

16 |                    CERTIFICATION OF DEFENDANT

17 |     I have read this agreement in its entirety.  I have had enough

18 | time to review and consider this agreement, and I have carefully and

19 | thoroughly discussed every part of it with my attorney.  I understand

20 | the terms of this agreement, and I voluntarily agree to those terms.

21 | I have discussed the evidence with my attorney, and my attorney has

22 | advised me of my rights, of possible pretrial motions that might be

23 | filed, of possible defenses that might be asserted either prior to or

24 | at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25 | of relevant Sentencing Guidelines provisions, and of the consequences

26 | of entering into this agreement.  No promises, inducements, or

27 | representations of any kind have been made to me other than those

28 | contained in this agreement.  No one has threatened or forced me in

                                   18

1  any way to enter into this agreement.  I am satisfied with the

2  representation of my attorney in this matter, and I am pleading

3  guilty because I am guilty of the charge and wish to take advantage

4  of the promises set forth in this agreement, and not for any other

5  reason.

6

7  ROBERT BOMAN                                    Date  2/4/23
   Defendant
8

9

10

11

12

13

14                  CERTIFICATION OF DEFENDANT'S ATTORNEY

15                  CERTIFICATION OF DEFENDANT'S ATTORNEY

16      I am ROBERT BOMAN's attorney.  I have carefully and thoroughly

17  discussed every part of this agreement with my client.  Further, I

18  have fully advised my client of his rights, of possible pretrial

19  motions that might be filed, of possible defenses that might be

20  asserted either prior to or at trial, of the sentencing factors set

21  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

22  provisions, and of the consequences of entering into this agreement.

23  To my knowledge: no promises, inducements, or representations of any

24  kind have been made to my client other than those contained in this

25  agreement; no one has threatened or forced my client in any way to

26  enter into this agreement; my client's decision to enter into this

27  agreement is an informed and voluntary one; and the factual basis set

28

                                  19

forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          2-4-2023

PETER SWARTH                              Date
Attorney for Defendant ROBERT BOMAN